1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Flaherty, | No. CV 09-8106-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Claimant Daniel Flaherty appeals the Social Security Commissioner's denial of disability benefits. The Court now rules on his appeal (Doc. #12).

**I.    BACKGROUND**

**A.    Procedural Background**

Claimant Daniel Flaherty filed an application for Social Security Disability Insurance benefits on October 13, 2005 alleging that he became unable to work on September 16, 2004. Transcript at 18, 96 ("Tr."). The Social Security Administration denied Claimant's application and Claimant filed a Request for Hearing on April 24, 2006. Tr. 58-63. A hearing was held before Ronald C. Dickinson, an Administrative Law Judge ("ALJ") on July 29, 2008. Tr. 28. Claimant testified at the hearing without assistance of counsel. Tr. 26-55. A Vocational Expert named George Joseph Bluth also testified. Tr. 26-55. In a decision dated August 29, 2008, the ALJ found that Claimant was not disabled within the meaning

of the Social Security Act because he could perform other work. Tr. 15-25. Claimant then retained counsel and filed a Request for Review on October 15, 2008 Tr. 10-14. The Appeals Council denied the Request for Review on April 24, 2009. Tr. 4-6. Claimant filed this appeal pursuant to 42 U.S.C. § 405(g).

### B. Medical Background

In September 2004, Claimant presented to John Brosnan, M.D., for an evaluation of his left shoulder. Claimant reported that he injured his shoulder approximately two weeks prior and that, since then, his shoulder popped intermittently when he used it. Tr. 157. Dr. Brosnan ordered a shoulder MRI (arthrogram) to rule out a tear of the shoulder joint cartilage (labrum). *Id.*

In October 2004, the left-shoulder MRI revealed a moderately abnormal build up of joint fluid (joint effusion), extensive inflamation of the joint membrane (synovitis), small tears of the inferior and anterior labrum and a larger tear of the posterior labrum, and mild to moderate osteoarthritis of the joint at the top of the shoulder (AC joint). Tr. 138, 155. Dr. Brosnan reported that Claimant was unable to work. Tr. 155.

Also in October 2004, Claimant visited the emergency room complaining of left rib cage and mid- and low-back pain after falling on rocks four days earlier. Tr. 141. Upon examination, Claimant had "some bruises over the posterior, left lower ribs, and the mid to low back." *Id.* Claimant—who had run out of Darvocet[1], which had been prescribed by his primary care physician—was given a prescription for Vicodin[2] and advised to follow up with his primary care physician. Tr. 141-142. Chest and rib x-rays were negative. Tr. 147-148.

In November 2004, Claimant followed-up with Dr. Brosnan reporting popping and discomfort in his shoulder, especially with overhead activities. Tr. 154. In January 2005, Claimant underwent arthroscopic surgery. Tr. 139. Later in January, during a follow-up appointment, Dr. Brosnan diagnosed Claimant with a degenerative disc disease of the

---

[1]A narcotic pain reliever used to treat mild to moderate pain.

[2]A narcotic pain reliever used to treat moderate to severe pain.

cervical spine and status post-left shoulder decompression with a repair of a type II SLAP lesion. Tr. 162. Dr. Brosnan told Claimant to continue to use his shoulder immobilizer and recommended physical therapy. Tr. 164-165. Dr. Brosnan cleared Claimant to return to work in May. Tr. 162.

In June 2005, Claimant again presented to Dr. Brosnan complaining of increased shoulder pain after yard work and on-and-off neck discomfort. Tr. 161. Dr. Brosnan stated that Claimant could return to light duty work, but he could not lift more than five pounds with his left arm or use his left arm repetitively. Tr. 160. Dr. Brosnan requested an MRI and told Claimant that he could not go back to his previous job due to the overhead work involved. Tr. 161.

In August 2005, Claimant had a repeat left shoulder MRI. Tr. 134-136. It revealed an overall loss of cartilage in the shoulder (glenohumeral) joint, tears of the anterior and posterior lips of the shoulder cartilage (glenoid labrum), and probable full thickness tear of the supraspinatus tendon. Tr. 134, 159. In a follow up exam, Dr. Brosnan diagnosed Claimant with moderate shoulder osteoarthritis (degenerative joint disease or DJD) and possible left nerve root entrapment carpal tunnel syndrome and neck (cervical) herniated disc (herniated nucleus pulposus or HNP). Tr. 159.

Claimant returned to Dr. Brosnan in October 2005 complaining of "intermittent discomfort in his left shoulder," neck pain, and on-and-off numbness down to his left hand. Tr. 156. In November 2005, Dr. Brosnan ordered an MRI of the cervical spine because of left arm radiculopathy. Tr. 132. The MRI revealed severe encroachment of the cervical neural foramina (opening in vertebrae allowing for the passage of the nerve root). Tr. 132-33.

Claimant continued to complain of shoulder, neck and left arm pain in December 2005. Tr. 153. Dr. Brosnan noted that the shoulder pain was "primarily activity related, doing a lot of lifting with it." *Id.* He referred Claimant to Matthew Bennett, M.D., regarding Claimant's neck pain. *Id.* Later in December 2005, Dr. Bennett diagnosed Claimant with degenerative arthritis of the cervical spine (spondylosis) and recommended a cervical spine

epidural steroid injection. Tr. 152.

In January 2006, Claimant visited James Naughten, D.O., for an orthopedic examination at the request of the state agency. Tr. 166-70. Claimant complained of low and upper back pain, neck pain and spasms, left shoulder pain and foot pain. *Id.* Claimant reported the following daily activities: cooking twenty-one times per week, cleaning twice a week, doing laundry and shopping once a week, watching TV, listening to the radio, and reading. Tr. 167. On exam, Claimant's gait, speed and agility were "mildly decreased" with a "mild limp." *Id.* He did not use an assistive device, was able to fully squat, needed no help getting on or off the exam table, and was able to rise from the chair without difficulty. *Id.* He had normal hand and finger dexterity, his right grip strength was 5/5 and his left grip strength was 4+/5. *Id.* He had full shoulder range of motion, no joint inflammation, effusion, or instability, and had 4/5 strength in the left arm and 5/5 strength in the right arm. Tr. 168.

Dr. Naughten opined that Claimant should avoid respiratory irritants, was not limited in his ability to sit or stand, was mildly limited in his ability to walk, mildly to moderately limited in his ability to push, pull, reach, and climb stairs, moderately limited in his ability to handle objects, and would be able to lift and carry "a mild degree of weight on an intermittent basis." Tr. 169. In February 2006, a lumbosacral x-ray reveled markedly narrowed disc spaces. Tr. 178.

Claimant, representing himself, appeared at a July 28, 2008 administrative hearing. Tr. 26-55. He testified he was forty-nine years old and a high school graduate who had attended college for two years. Tr. 36-38. Most of his past work was as an electrician. Tr. 40. He testified that he could no longer work as an electrician because he could not move his "legs and [his] arms the way [he] need[ed] to." Tr. 43. Claimant testified that he had a driver's license and drove a truck that pulls a recreational vehicle. Tr. 37. He spends his day playing guitar and piano and "doing little things around the house." Tr. 47. He testified that he could stand for ten minutes and could sit in one place for about twenty minutes. Tr. 43-44. He also testified that he uses a cane to walk. Tr. 44. According to Claimant, he injured his foot ten years prior—and that it was never fixed—which caused him to be unstable. Tr.

47-48. He testified that he was unable to get medical care: "it's not that I haven't tried, it's just when I go there, you know, they don't care how much money you have to pay them. They don't want to hear that. They want to know, you know, that you got some kind of insurance. I've tried to get medical insurance and . . . nobody returns my calls." Tr. 54.

A Vocational Expert, Mr. Bluth, also testified at the administrative hearing. Tr. 51. He testified that Claimant's past relevant work as an electrician was skilled work that required medium exertional level. *Id.* The ALJ asked the Vocational Expert whether a hypothetical person of Claimant's age, education, work history and residual functional capacity—capable of unskilled light work, could lift twenty pounds occasionally and ten pounds frequently, but could not crawl, crouch, climb, squat, or kneel, use his arms for work above the shoulder level, or his legs or feet for pushing and pulling, and would need to be able to alternate between sitting and standing—could perform work that existed in the state and national economies. Tr. 52. The Vocational Expert testified that such a person could work as a cashier (5,000 jobs in Arizona and one million jobs nationally), assembly worker (5,000 jobs in Arizona and one million jobs nationally), and quality control inspector (2,000 jobs in Arizona, 600,000 jobs nationally). Tr. 52-53.

## II. STANDARD OF REVIEW

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings if supported

by inferences reasonably drawn from the record. *Batson v. Comm'r. of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

**III. DISCUSSION**

To qualify for disability benefits under the Social Security Act a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.SC. § 423(d)(2)(A). The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," for example: lifting; carrying; reaching; understanding, carrying out and remembering simple instructions;

responding appropriately to co-workers; and dealing with changes in routine. 20 C.F.R.§ 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, the claimant is not disabled.

  3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most he can do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

  4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

  5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the Commissioner has the burden of proving the claimant can perform other work. *Reddick*, 157 F.3d at 721.

1   In this case, the ALJ concluded at step five of the sequential process that Claimant
2   was not disabled. The ALJ found that Claimant was capable of performing unskilled work
3   as a cashier, assembly worker or quality control inspector as long as the work allowed a
4   "sit/stand option." Tr. 24.

5   On appeal, Claimant argues that the ALJ committed legal errors in assessing step five
6   of the sequential process. Claimant first argues that the ALJ erred by not fully developing
7   the record. Claimant also argues that the ALJ's decision was not supported by substantial
8   evidence because the ALJ did not assess Claimant's residual function capacity on a function-
9   by-function basis and because the ALJ ignored the limitations that the consultative
10  examining physician placed on Claimant's ability to reach and handle objects. Because the
11  Court finds that the ALJ erred by not fully developing the record, it will address only that
12  legal error.[3]

### **ALJ's Duty to Fully Develop the Record**

Claimant argues that the ALJ failed to fully develop the record and then impermissibly drew negative inferences against Claimant from the lack of evidence in the record. "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citation omitted). When a claimant is not represented "the ALJ must be especially diligent," *id.*, and "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts," *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) (citation omitted). When "the heavy burden imposed by *Cox*" is not met, and the claimant may have been prejudiced, "the interests of justice demand that the case be remanded." *Vidal v. Harris,* 637 F.2d 710, 714-15 (9th Cir. 1981).

---

[3]Determining whether the ALJ's decision is supported by the weight of substantial evidence is speculative where the record is lacking. The proper course therefore is to remand to the ALJ to develop the record before assessing whether the ALJ impermissibly analyzed Claimant's residual functional capacity or ignored the examining physician's recommendations. *See Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003) (remanding where ALJ did not fully develop the record).

In *Celaya v. Halter*, the Ninth Circuit outlined the ALJ's heightened duty to fully develop the record when the claimant is not represented by counsel. 332 F.3d 1177, 1177 (9th Cir. 2003). There, the ALJ found that the claimant was not disabled because she could perform light work, including her past work as a presser for a dry cleaners. *Id.* at 1180. On appeal, the claimant argued that the ALJ should have developed the record as to her obesity, even though the claimant never explicitly raised this as a disabling condition. *Id.* at 1182. The Ninth Circuit agreed requiring the ALJ to "probe into, inquire of, and explore for all the relevant facts." *Id.* at 1183 (citing *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir.1992)). The court reasoned that the ALJ should have known from the claimant's symptoms and appearance that she was obese and that her obesity could have contributed to her other disabilities. *Id.* at 1183. The court further noted that the ALJ relied on a medical report that also failed to account for the claimant's obesity. *Id.* at 1183-1184. As a result, the court remanded to develop the record on the claimant's obesity. *Id.* at 1184.

Here, the ALJ found that Claimant was not disabled because he could perform other work that exists in the national economy.[4] Tr. 24. Claimant, who was unrepresented at his hearing, claims that the ALJ failed to fully develop the record. Tr. 26-55. The Court agrees that the ALJ failed to fully develop the record in regards to Claimant's daily activities, Claimant's pain that allegedly lingers for days after physical exertion, and Claimant's failure to seek medical treatment.

### 1. Claimant's Daily Activities

Claimant argues that the ALJ's failure to develop the record on Claimant's daily activities allowed the ALJ to draw negative inferences about Claimant's credibility. Claimant's Opening Brief at 14. Daily activities may only form the basis of an adverse credibility finding if a claimant can spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Fair*

---

[4]This is step five of the five-step sequential process for evaluating disability claims outlined in 20 C.F.R. §404.1520.

*v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The mere fact that a claimant can carry on a limited amount of daily activities does not detract from the claimant's credibility as to his overall disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The Commissioner must assess the claimant's ability to work on a sustained basis. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996).

Here, the ALJ determined that Claimant's ability to cook 21 times a week, do yard work, laundry and shopping was inconsistent with Claimant's allegation of severe pain. Tr. 22. The ALJ also found Claimant's testimony that he plays guitar and piano daily was inconsistent with Claimant's testimony that he had difficulty moving his arms. Tr. 22-23. However, the ALJ never questioned Claimant about these daily activities. The record should have been developed as to whether Claimant can spend a substantial part of his day engaged in such activities and whether they are transferable to a work setting. *See Orn*, 495 F.3d at 639. Even though Claimant never explicitly claimed to experience pain while performing these daily activities or complained that he could only perform these daily activities on a limited basis, the ALJ should have "explor[ed]. . . all the relevant facts" regarding Claimant's testimony. *See Celaya*, 332 F.3d at 1183. Instead, the ALJ drew a negative inference from Claimant's testimony about these activities based on the lack of explanation in the record. Tr. 22. This is similar to the ALJ's failure to question the claimant in *Celaya* about her obesity despite the evidence that obesity could have contributed to her disability. *See Celaya*, 332 F.3d at 1183. As in *Celaya*, the ALJ here has not fulfilled his duty to fully establish the record.

The Court therefore finds that this case must be remanded to develop the record on Claimant's daily activities.

### 2. **Claimant's Pain Lingering for Days after Physical Exertion**

The record also should have been developed regarding pain that lingered for days after Claimant physically exerted himself. The ALJ must assess the claimant's ability to work on a sustained basis. *Lester*, 81 F.3d at 833. Claimant expressed concern that, even if he could work for a few days, physical exertion would cause him pain in subsequent days that would

keep him out of work. Tr. 54. Although the ALJ briefly questioned Claimant about his lingering pain at the hearing, the ALJ did not address this concern in his written decision. Tr. 24, 54. Instead, the ALJ relied solely on Dr. Naughten's evaluation to determine Claimant's residual functional capacity. Tr. 22. However, Dr. Naughten only saw Claimant one time. Tr. 22, 166-170. Therefore, Dr. Naughten could not have analyzed Claimant's lingering pain.

The ALJ's failure to consider Claimant's concern about lingering pain prejudiced the Claimant. At the hearing, the Vocational Expert testified that Claimant probably would not be able to keep a job if he missed more than two or three days a month. Tr. 53. Yet, the ALJ failed to further question the Vocational Expert about this concern. Tr. 53-54. Neither does the ALJ's written decision discuss the possibility that if the Claimant experiences pain for days after physical exertion, he may not be able to work in the capacity suggested by the Vocational Expert. Tr. 24. Therefore, the ALJ has not met his burden of "assur[ing] that the claimant's interests are considered," *Tonapetyan*, 242 F.3d at 1150, because he failed to consider that Claimant might experience pain in the days following physical exertion and he failed to question the Vocational Expert about Claimant's employability if he missed work due to lingering pain. Like *Celaya*, the ALJ relied on medical findings that did not take into account one of Claimant's concerns. *See Celaya*, 332 F.3d at 1183-1184.

As a result, the Court finds that this case must be remanded to develop the record on Claimant's ability to work despite his claims of pain lingering for days after physical exertion.

### 3. Claimant's Failure to Seek Treatment

Claimant also argues that the ALJ impermissibly drew negative inferences from Claimant's failure to seek further treatment for his neck and shoulder pain. Claimant's Opening Brief at 14. Social Security Regulation 96-7p provides that: (1) "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," and (2) "[t]he adjudicator may need to

1  recontact the individual or question the individual at the administrative proceeding in order
2  to determine whether there are good reasons the individual does not seek medical treatment
3  or does not pursue treatment in a consistent manner." SSR 96-7p, "Medical Treatment
4  History." The Social Security Administration abuses its discretion when it fails to abide by
5  its own regulations. *Reed v. Massanari*, 270 F.3d 838, 842-843 (9th Cir. 2001).

6  Here, Claimant testified that he could not find adequate medical treatment because
7  health care providers turn him away when they discover he has no insurance. Tr. 54.
8  Claimant further testified that he has tried and failed to get medical insurance. Tr. 54. The
9  ALJ did not discuss this explanation with regards to Claimant's shoulder pain or Claimant's
10 failure to receive a steroid injection for his neck pain. Tr. 21. Instead, the ALJ inferred that
11 Claimant's shoulder pain was not severe based on the fact that Claimant received no
12 treatment for his shoulder pain. Tr. 21.

13 The ALJ noted that the Claimant received Workers' Compensation for the job-related
14 shoulder injury, yet the Claimant specifically testified that he could not get treatment because
15 of his lack of insurance, not his lack of money. Tr. 21, 54. Likewise, the ALJ simply stated
16 that there was no evidence of a steroid injection despite never asking Claimant about the
17 injection. Tr. 21. These failures to develop the record on Claimant's explanations violates
18 SSR 96-7p(1) because they allowed the ALJ to draw a negative inference from Claimant's
19 lack of treatment without considering Claimant's explanations. Thus, the ALJ should have
20 developed the record on the issue of Claimant's lack of treatment before using that issue
21 against him.

22 The ALJ did discuss Claimant's explanation for why he failed to get surgery for his
23 neck pain. Tr. 21. However, the ALJ then expressed doubts as to whether the surgery would
24 have even been necessary. Tr. 22. Where such doubt exists, the ALJ should have further
25 questioned the Claimant or contacted the doctors involved to discover whether the surgery
26 was necessary. *See* SSR 96-7p(2). This is especially true when the ALJ must "probe into,
27 inquire of, and explore for all the relevant facts" because Claimant was unrepresented at his
28 hearing. *Celaya*, 332 F.3d at 1183 (citing *Higbee*, 975 F.2d at 561).

1    The Court therefore finds that this case must be remanded to develop the record on Claimant's failure to seek treatment.

### 4. Lay Witnesses

Claimant contends that the ALJ failed to develop the record with regards to his lay witnesses. Claimant's Motion at 13. However, there is no authority requiring the ALJ to seek out lay witnesses for claimants. Even though the ALJ has a heightened duty to inquire into all the relevant facts, Claimant did not mention his lay witness at his hearing. Claimant listed one lay witness as a person whom the ALJ could contact on two of his Social Security forms. Tr. 99, 115. Had the ALJ fully developed the record, it may not have been necessary for the ALJ to contact this witness. Therefore, the Court will not now impose a duty on the ALJ to seek out all lay witnesses that claimants list anywhere on their Social Security forms.

### 5. Conducting the Hearing without Counsel

Finally, Claimant contends that he was reluctant to proceed without counsel and that the ALJ impermissibly ignored this reluctance. Claimant's Motion at 12. Where a claimant is unrepresented "the ALJ must be especially diligent." *Tonapetyan v. Halter*, 242 F.3d at 1150. However, claimants are allowed to proceed without counsel. *See Cox*, 587 F.2d at 991. Here, Claimant had sufficient warning before his hearing that he could seek representation. Tr. 64-68, 70-71. Even though Claimant expressed some reluctance, he did eventually agree to proceed. Tr. 28-30. The Court therefore does not find that the ALJ's decision to proceed without counsel was in error.

## IV. CONCLUSION

The Court finds that the ALJ has not fully developed the record in regards to Claimant's daily activities, Claimant's testimony of pain that lingered for days after physical exertion, and Claimant's failure to seek treatment. Since the ALJ has not fulfilled his independent duty to fully and fairly develop the record, the case must be remanded.

Accordingly,

///

///

**IT IS ORDERED** that the Commissioner's Decision is Vacated and the case is Remanded for further proceedings.

DATED this 28th day of June, 2010.

_____
James A. Teilborg
United States District Judge